UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. CR-06-113 (ESH) |
| v. | : | Sentencing: March 28, 2008 |
| | : | UNDER SEAL |
| DONALD HUNTER | : | |
| Defendant. | : | |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. The government is requesting that the Court accept the Presentence Report, and then depart from the determined guideline range based on the defendant's assistance to the government pursuant to guideline § 5K1.1 and 18 U.S.C. 3553(e).

    A.  Background

        1.  Offense Conduct

Given that this Court has heard much of the evidence in this case twice there is little need for a lengthy factual rendition. However a brief summary may be helpful.

In the fall of 2004, the Safe Streets Task Force, run out of the Washington Field Office of the Federal Bureau of Investigation (FBI), began investigating possible cocaine-trafficking by a District of Columbia night club owner named Antoine Jones. As part of the investigation they conducted a Title III wire intercept on Jones' cell phone from September 2, 2005, to October 24, 2005. In the course of the wire interception Jones was overheard speaking with various individuals in what investigators interpreted as coded conversations regarding the sale of wholesale quantities

-2-

of cocaine by Jones to these individuals. In still other conversations, Jones was overheard speaking with three Hispanic men, believed to be Jones's Mexican cocaine suppliers, in what investigators viewed as coded conversations regarding the shipments of cocaine to the D.C. area, and the timing of meetings at a stash location for Jones to pick up the drugs and drop off cash.

During the course of the wire interception, defendant Hunter was overheard speaking in this same code regarding the purchase of cocaine form Jones. Indeed, on the day of his arrest, October 14, 2005, Mr. Hunter and Jones spoke and arranged to meet at Club Levels. Mr. Hunter went to Levels that morning, and dropped off in excess of $5,000, in cash as advanced payment for a quarter kilogram of cocaine. As he was driving away from that drop, he was stopped and arrested on an outstanding narcotics warrant.

A few days later, on October 19, 2005, based on calls between Jones and his suspected Mexican supplier, who utilized a cellular telephone with a Texas area code, investigators believed that a sizeable shipment of cocaine was en route to the Washington, D.C., area on the weekend of October 22-23, 2005. A determination was made that the case should be taken down and that load of cocaine intercepted – and so over the course of the ensuing few days, numerous search warrants were prepared and a team of over 100 federal and local law enforcement agents was assembled to execute those warrants. In the early morning hours of October 24, 2005, agents executed 10 search warrants at residences in the District of Maryland, including those of John Adams and Demetrius Johnson, along with Jones, and at Jones's nightclub, Levels, in the District of Columbia. Recovered from Jones's Jeep Grand Cherokee was in excess of $69,000, in cash, bundled up and stashed in various bags; recovered from Adams was approximately an eighth of a kilo of cocaine, $10,000, and two guns; recovered from Johnson was 600 grams of cocaine, and $12,000. Recovered from

the residences of various other suspected customers were wholesale quantities of cocaine, large amounts of cash, along with firearms, digital scales, and other drug packaging paraphernalia. From the suspected stash house in Ft. Washington, MD, agents recovered 97 kilograms of powder cocaine, just under one kilogram of crack cocaine, and in excess of $850,000, in cash. Alberto Carillo-Montelongo, Ricardo Sanchez-Gonzalez and Roel Bermea were also located there.

Hunter and a number of other individuals who were arrested in October, 2005, pleaded guilty and agreed to cooperate with the government. Some of them were suspected purchasers from Jones, including Hunter. Hunter and the other cooperators confirmed investigators's belief that many of the meetings Jones set up with individuals along Branch Avenue and at the nightclub Levels were for the purpose of exchanging cash and cocaine. They also explained the use of various kinds of "code" in Jones's conversation over the phone.

Bermea, who was part of the organization that supplied Jones, verified that the coded calls between Bermea's Mexico-based boss and Jones pertained to the timing of the delivery of sizable cocaine shipments, often in the 50+ kilogram range. In addition, Bermea stated that his numerous short conversations with Jones were for the purpose of arranging to meet with Jones to deliver the cocaine.

2. Cooperation

As part of his plea agreement, Hunter fully debriefed on a number of occasions – indeed on the very day of his arrest, he began providing information regarding Jones, Maynard, and others, and continued to do so for several months hence. As the Court knows, Mr. Hunter also testified at both trials in this matter, in a manner that was – in the government's opinion – both truthful and effective. Finally, in addition to information regarding the Jones/Maynard narcotics conspiracy, Mr,

Hunter provided additional useful information regarding narcotics dealer in the neighborhood in which he grew up, information and leads that continue, to this day, to be helpful to narcotics squads working in that area.

### B. Sentencing Guidelines Analysis

The Pre-Sentence Report states that the initial offense level for the defendant's conduct based on drug quantity is 34 (§2D1.1(a)(3)). Given a two-level enhancement for possession of a firearm, and a three-level reduction for acceptance of responsibility (§3E1.1), his final offense level should be 33. With his criminal history of VI, Mr. Hunter's guidelines range should be 235-293 months. The Presentence Report does not, of course, evaluate any departure under § 5K1.1, a departure that the government does recommend to the Court.

### C. Sentencing factors under 18 U.S.C. §3553

Ordinarily the base guideline range for this offense would be appropriate, taking into account the factors set forth in 18 U.S.C. §3553(a), as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for --
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --
>>
>>> (i) issued by the Sentencing Commission ...; and
>>>
>>> (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement --
>
>> (A) issued by the Sentencing Commission ... and
>>
>> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

It is clear from the explicit language of the statute that the framers both endorse and respect the ranges set by and the policy statements made by the United States Sentencing Commission, itself a body made up primarily of experienced District Court Judges.  It is also apparent that §3553(a) is the linchpin of the Guidelines drafted by the Commission, which set forth in its preamble its reliance on the statute and cites each factor set forth there, most particularly, "the need

to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," which is a core goal of the Guidelines. See 18 U.S.C. §3553(a)(6).

Given the quantity of drugs involved in the defendant's activity, albeit over a fairly long period of time, the guideline range at either base offense level is appropriate. And, other pertinent portions of §3553(a) referencing the Sentencing Guidelines, its policy statements, and its fundamental emphasis on uniform sentencing would all certainly support the imposition of a sentence in the range of 235-293 months, consistent with similar crimes and the defendants committing them.

However, the guidelines also recognize that the Court can appropriately depart from the guideline range when a defendant has provided substantial cooperation to the government. The Court may consider a whole range of factors in determining the level of such a departure, although a non-exclusive list is set forth in § 5K1.1. In reviewing that list, the following observations may be of some help to the Court:

1. In the government's view the information the defendant has provided is accurate and reliable.

2. The defendant provided information in a timely fashion after he agreed to plead guilty and cooperate with the government – indeed on the very day of his arrest.

3. The defendant's information and testimony was compelling and forthright, contributing without question to the convictions at trial of Jones and Maynard.

4. There is evidence of specific threats and danger to the defendant from his cooperation, based on information he has received while incarcerated at the Correctional Treatment Facility, the details of which we will discuss at the sentencing.

Recognizing this assistance, the United States moves for a departure pursuant to both U.S.S.G. § 5K1.1 and 18 U.S. C. § 3553(e). The government therefore recommends a sentence of 60 months.

WHEREFORE, the government requests that the Court adopt the PSR, depart based on the defendant's substantial cooperation, and impose a sentence of 60 months.

    Respectfully Submitted,

    JEFFREY A. TAYLOR
    UNITED STATES ATTORNEY


By: _____
    RACHEL CARLSON LIEBER
    JOHN V. GEISE
    Assistant U.S. Attorneys
    United States Attorney's Office
    555 Fourth Street, N.W. Rm. 11-909
    Washington, D.C.  20530
    Tel. (202) 353-8055
    Rachel.Lieber@usdoj.gov